UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARVIN BELSER,

        Plaintiff,

                                    Case No. 2:16-cv-134
v.                                    HON. PAUL L. MALONEY

JEFF WOODS, et al.,

        Defendants.
_____/

**OPINION**

Plaintiff Marvin Belser, an inmate currently confined by the Michigan Department of Corrections (MDOC), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Jeff Woods, C. Horton, D. Isard, Reid Goldberg, Bienvenido B. Canias, Malissa Laplunt, Mike Brown, Penny L. Filion, Marci L. Hatfield, S. Baldino, and M. McLean. ECF No. 1. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendants Woods, Horton, Isard, Goldberg, Baldino, and McLean. The Court will order service of the complaint on Defendants Canias, Laplunt, Brown, Filion, and Hatfield.

**DISCUSSION**

I. Factual Allegations

Plaintiff arrived to prison in his personal electric wheelchair on July 28, 2006. PageID.10. A few weeks later, Plaintiff was taken to the hospital for chest pain and difficulty breathing. PageID.10. When Plaintiff returned to the prison, the nurse told Plaintiff that another inmate who had been discharged from prison mistakenly took Plaintiff's personal electric wheelchair. PageID.10. Some of Plaintiff's other property was missing too, such as a cushion. PageID.10. These items were never returned.

In addition, Plaintiff has a Child Protective Services case that is documented in the Michigan Department of Corrections (MDOC) computer system, which includes his name and his children's names. PageID.5. Plaintiff contends that he did not consent to this case being available through the law library or MDOC computer system. PageID.5. Plaintiff has asked the law library supervisor (Defendant Goldberg) over twenty times to take his case off of the MDOC computers, but he has not done so. PageID.5. Plaintiff believes that having his, as well as his children's, personal information on the MDOC computers has placed himself and his children in danger. PageID.5. For instance, Plaintiff indicated that he was attacked by inmates, thrown from his wheelchair, hit in the head from behind, harassed by prison staff, and denied medical attention by Defendants Canias, Laplunt, Filion, Hatfield, and Brown. PageiD.5.

Moreover, Defendants Canias, Laplunt, Filion, Hatfield, and Brown would laugh at Plaintiff and tell him that he had nothing wrong with him despite Plaintiff's several kites and requests for medical attention. PageID.5. Plaintiff stated that he requires "nitrotapps, incontinate [sic] garments, transfer board, shower chair, replacement velcro shoes, air mattress, singal [sic] cell detail,

P.T. on aide to assist detail and to be transferred to a medically assistant [sic] living facility because [he] cant [sic] stand or walk," for example, but is not receiving them. PageID.5.

On March 1, 2014, while housed at Chippewa Correctional Facility, Plaintiff was attacked by three inmates. PageID.5-6. After this incident, when Plaintiff had returned back to his cell, he was attacked again by three more inmates. PageID.6. These attacks resulted in Plaintiff being unable to stand, walk, move his left side, open his left eye, or speak clearly, and he also had pain in his spine, neck, and right foot. PageID.6. As a result of this incident, Plaintiff requested that he be placed in protective custody. PageID.6.

From March 1, 2014, through March 20, 2016, Plaintiff was told by doctors at Chippewa that he needed a wheelchair. PageID.7. So, Plaintiff was provided a non-electric wheelchair and special details. PageID.7. However, Plaintiff states that while at Chippewa Correctional Facility, Plaintiff's wheelchair, medical equipment, and medical details were taken away from him. PageID.6. From March 29 through April 1, 2014, Plaintiff was at the War Memorial hospital because he was having chest pains and difficulty breathing. PageID.6. Plaintiff stated that the physician at the hospital had made arrangements for Plaintiff to be sent to a medically assisted living facility, for which the Chippewa medical staff agreed to make arrangements, but never did. PageID.6.

Plaintiff was discharged from the hospital on April 1, 2014. PageID.6. Two officers came to the hospital to pick up Plaintiff and transfer him back to the Chippewa facility. PageID.6. While at the hospital, the two officers ordered that Plaintiff stand and dress himself before they left. PageID.6. Plaintiff told them that he could not do that without help, but the officers refused to help Plaintiff. PageID.6. Sergeant Ormsbee eventually told the two officers to not worry about Plaintiff

putting his clothes on, and to put Plaintiff in full restraints. PageID.6. The officers then helped Plaintiff off of the hospital bed and put him into a wheelchair. PageID.7. The officers took Plaintiff outside to the transport van, at which time Sergeant Ormsbee told Plaintiff to get out of the wheelchair and enter the van, or else he would be tased pursuant to orders from Defendant Woods. PageID.7. Sergeant Ormsbee tased Plaintiff in the chest twice, which caused Plaintiff to pass out. PageID.7. When he woke up, Plaintiff was naked and being pulled out of the transport van by two officers and placed in a wheelchair. PageID.7.

On May 6, 2014, Plaintiff was transferred to Baraga Maximum Facility. PageID.7. There, he was forced to "crawl on the floor and ground to move around" his cell and the facility. PageID.7. On May 25, 2016, Plaintiff was transferred back to the Chippewa Correctional Facility. PageID.7. When he arrived back to Chippewa, he asked Officer Smith to place him in protective custody, but she said that Sergeant Ormsbee needed to approve this type of request. PageID.7. Sergeant Ormsbee denied Plaintiff's request to be placed in protective custody. PageID.7. Instead, Plaintiff was placed back in the same unit where he was attacked in March of 2014. PageID.7. However, officers told Plaintiff that Defendants Woods, Horton, and Isard stated that Plaintiff should speak up if he is having problems there. PageID.8.

In addition, after his transfer back to the Chippewa facility, Plaintiff requested a single cell due to his wheelchair needs and incontinence issues. PageID.8. However, Plaintiff's request was denied. PageID.8. On May 5, 2016, Plaintiff was assigned a "bunky." PageID.8. Plaintiff caught his bunky stealing Plaintiff's personal property; however, the bunky stated that he would physically harm Plaintiff if Plaintiff told the staff about his stealing. PageID.8. The bunky harassed Plaintiff and made fun of his medical issues, too. PageID.8. Plaintiff fears for his life. PageID.8.

On May 6, 2016, Plaintiff requested that he be placed in protective custody again. PageID.8. After this request, Plaintiff was placed in segregation while his request was pending. PageID.8. That same day, Plaintiff was interviewed by the Security Classification Committee to determine whether he should be placed in protective custody. PageID.8. The committee concluded that Plaintiff should return to the cell he was originally assigned to, and that if he did not return there, he would be issued a Class I misconduct ticket for disobeying a direct order. PageID.8. In response to this order, Plaintiff told the hearing officer (Mr. Theut) that he was in fear for his life, and that he could not defend himself. PageID.8. Plaintiff was then issued a misconduct ticket, for which he was later found guilty and sanctioned to five days in segregation. PageID.8. Similarly, on May 21, 2016, Plaintiff received another misconduct ticket for disobeying a direct order. PageID.8. Plaintiff asserts that this denial of protective custody constitutes a claim for failure to protect under the Eighth Amendment. PageID.8.

Moreover, for three years, Plaintiff has not been able to brush his teeth because his long-handled toothbrush was taken by MDOC staff while he was housed at Marquette Branch Prison. PageID.9. Defendant Baldino has refused to renew Plaintiff's detail for a long-handled toothbrush. PageID.9. Plaintiff has tried to use a standard toothbrush, but he cannot use it well because he lost the feeling in his right hand. PageID.9.

In addition, after Plaintiff was transferred back to Chippewa prison, his personal property was lost. PageID.9. Plaintiff has asked several officers and written many grievances regarding this issue, but he has not received any sort of positive responses. PageID.9. In addition, Plaintiff could not exhaust his administrative remedies relating to some other issues because Defendant McLean (the grievance coordinator) did not provide some of Plaintiff's grievances

identifier numbers or did not reply to or send a Step II responses for certain grievances. PageID.9-10.

Finally, Plaintiff asserts that Defendant Goldberg has improperly told the law librarians not to respond to any of Plaintiff's kites. PageID.10. Based on all of these occurrences, Plaintiff alleges that Defendants violated his constitutional rights.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

### A. Supervisory Liability

Plaintiff asserts that Sergeant Orsmbee improperly tased Plaintiff at the orders of Defendant Woods on April 1, 2014, when Plaintiff was being transferred from the hospital back to prison. PageID.6. However, Plaintiff did not state that Defendant Woods was present when the tasing occurred, or that Defendant Woods even knew what was going on at the time Plaintiff was tased. Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Gritner v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Because Plaintiff has not demonstrated that Defendant Woods was present or knew that Sergeant Ormsbee was going to tase him, Plaintiff's claim against Defendant Woods fails.

### B. Eighth Amendment - Failure to Protect

Next, Plaintiff makes two Eighth Amendment claims for failure to protect: (1) that Defendants Woods, Horton, and Isard failed to protect Plaintiff when they did not place him in protective custody on May 25, 2016, and (2) that Defendant Goldberg failed to protect Plaintiff when he did not remove Plaintiff's child custody case from the MDOC computers, which Plaintiff believes

is the reason why he was assaulted by other prisoners in March of 2014.[1]

Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners. *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839. The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837. Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied: (1) the inmate must show that a substantial risk of harm was present and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind. *Id.* In showing that these two conditions are met, the plaintiff must show "more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'--exhibiting

---

[1] While it appears that Plaintiff makes a failure to protect claim against Mr. Theut for denying Plaintiff's request for protective custody on May 6, 2016, Plaintiff did not name Mr. Theut as a defendant in this case. Accordingly, this claim is dismissed.

recklessness or callous neglect." *Id.* at 165; *see Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988); *see also Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity).

### i. Defendants Woods, Horton, and Isard

Plaintiff claims that on May 25, 2016 (after being transferred back to Chippewa Correctional Facility from the Baraga Maximum Facility), Sergeant Ormsbee improperly denied Plaintiff's request to be placed in protective custody, and that when Plaintiff was taken to his cell, Defendants Woods, Horton, and Isard did not help Plaintiff be placed in protective custody. In an attempt to satisfy the first condition of his failure to protect claim (that a substantial risk of harm was present), Plaintiff indicates that he feared being attacked again by prisoners at the Chippewa Facility since he was attacked there two years ago. Plaintiff does not indicate that the same violent prisoners were present at the facility that attacked him in 2014, or that there were any other reasons for him to fear physical harm in 2016. Based on this information, Plaintiff has failed to demonstrate that a substantial risk of harm was present when he was not placed in protective custody by Defendants on May 25, 2016. Moreover, Plaintiff has failed to demonstrate that Defendants Woods, Horton, and Isard were the people involved in making the decision to deny Plaintiff's request to be placed in protective custody in 2016 (rather, he says Sergeant Ormsbee was the person with authority to grant or deny protective custody requests). As a result, Plaintiff's failure to protect claim against Defendants Woods, Horton, and Isard is dismissed.

### ii. Defendant Goldberg

Next, Plaintiff claims that Defendant Goldberg failed to protect Plaintiff from prisoner attacks when Defendant refused to remove Plaintiff's child custody case from the MDOC

computer system in 2014. With regard to the first condition of a failure to protect claim, Plaintiff has

sufficiently alleged that he was subjected to serious harm because he was attacked by six prisoners

in March of 2014. However, Plaintiff has failed to satisfy the second condition of his Eighth

Amendment claim—that Defendant Goldberg had a culpable state of mind when he refused to

remove Plaintiff's custody case from the computer system. Rather, Plaintiff merely states that

Defendant Goldberg did not remove the case from the computers when Plaintiff asked him to do so.

This does not overcome the possibility that Defendant Goldberg acted in error, meaning Plaintiff has

not satisfied the second condition of his failure to protect claim. *See Gibson*, 963 F.2d at 853 (noting

errors do not demonstrate a sufficiently culpable state of mind for purposes of the second condition

of a failure to protect claim); *see also Jeffers*, 10 F.3d at 381 (stating errors of judgment are shielded

by qualified immunity). Accordingly, Plaintiff's claim against Defendant Goldberg is denied.

### C. Eighth Amendment - Medical Deliberate Indifference

Plaintiff raises two Eighth Amendment claims of medical deliberate indifference: (1)

that Defendants Canias, Laplunt, Brown, Filion, and Hatfield were deliberately indifferent to

Plaintiff's medical needs from the time he arrived at the Chippewa Facility until the time this action

was filed, and (2) that Defendant Baldino was deliberately indifferent to Plaintiff's dental needs

when she would not reinstate Plaintiff's medical detail for a long-handled toothbrush.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment

against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates

prison authorities to provide medical care to incarcerated individuals, as a failure to provide such

care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S.

102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately

indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

*i. Defendants Canias, Laplunt, Brown, Filion, and Hatfield*

Plaintiff alleges that Defendants Canias, Laplunt, Brown, Filion, and Hatfield were

deliberately indifferent to his medical needs when Plaintiff arrived at Chippewa until the time he filed this case. Plaintiff asserts that he needs a wheelchair and other medical equipment, such as "nitrotapps, incontinate [sic] garments, transfer board, shower chair, replacement velcro shoes, air mattress, [and a ] singal [sic] cell detail," but Defendants have denied him these items, laughed at his requests, and told Plaintiff that nothing is wrong with him. PageID.5.  In addition, Plaintiff asserts that he should have been transferred to a medically assisted living facility since a doctor at the War Memorial Hospital said Plaintiff should be in one, but Defendants failed to transfer Plaintiff. PageID.5. The Court concludes that Plaintiff's allegations are sufficient to warrant service of his Eighth Amendment deliberate indifference claim on Defendants Canias, Laplunt, Brown, Filion, and Hatfield.

### ii. Defendant Baldino

Plaintiff's second deliberate indifference claim is that Defendant Baldino improperly refused to reinstate Plaintiff's medical detail for a long-handled toothbrush for three years when she knew that Plaintiff needed one. Plaintiff claims that he needs a long-handled toothbrush because the standard toothbrushes are too small for him given that he lost the feeling in his right hand.

Here, Plaintiff has failed to demonstrate the objective component of his Eighth Amendment claim—that it would be obvious, even to a lay person, that Plaintiff's need for a long-handled toothbrush was obvious. *Farmer*, 511 U.S. at 834. Since Plaintiff's claim is based on a "minor or non-obvious" medical need, Plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted); *see also Blackmore*, 390 F.3d at 898. Plaintiff did not provide any medical evidence to support his minor or non-obvious medical need that requires him to use a

long-handled toothbrush. Accordingly, his claim against Defendant Baldino is dismissed.

### D.  First Amendment - Access to Courts

Plaintiff asserts that he was denied access to the courts. Specifically, he claims that (1) Defendant Goldberg denied him access to the courts when told the law librarians not to respond to any of Plaintiff's kites, and (2) Defendant McLean denied him access to the courts when he did not afford an identification number to Plaintiff's grievances, or respond to Plaintiff's grievances, thereby prohibiting Plaintiff from exhausting his administrative remedies for potential civil rights claims.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28).  Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).  In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349, 351 (noting to state a claim, an inmate must show that any shortcomings in the library or legal assistance caused actual injury in his pursuit of

a legal claim); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000; *see also Christopher v. Harbury*, 536 U.S. 403, 416 (2002) ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."). Actual injury could be, for example, "having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Jackson v. Gill*, 92 Fed. App'x 171, 173 (6th Cir. 2004)).

Here, Plaintiff has not alleged that he suffered an "actual injury" to any pending or contemplated litigation. Plaintiff did not indicate that he cannot file a complaint or that any outstanding cases were dismissed as a result of Defendants' actions. As a result, Plaintiff's claims against these two Defendants are dismissed.

### E. Conclusory Allegations

Plaintiff raises several claims of lost or stolen property; however, he does not name anyone that is responsible for this misconduct or violation of Plaintiff's rights. In addition, he raises a claim that Sergeant Ormsbee used excessive force against him when the Sergeant tased him, but Plaintiff did not name Sergeant Ormsbee as a defendant in this case. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79 (2009); *Twombly*, 550 U.S. at 555. As a result, Plaintiff's claims against unknown parties for lost or stolen property are dismissed. Moreover, any claim Plaintiff is attempting to assert against Sergeant Ormsbee is improper because the Sergeant is not a named defendant in this action.

III. Conclusion

Having conducted the review by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants Woods, Horton, Isard, Goldberg, Baldino, and McLean fail to state a claim, and will therefore be dismissed. The Court will serve Plaintiff's Eighth Amendment claims for medical deliberate indifference against Defendants Canias, Laplunt, Brown, Filion, and Hatfield.

Accordingly, the Court will order the complaint served upon Defendants Canias, Laplunt, Brown, Filion, and Hatfield.

An Order consistent with this Opinion will be entered.


Date:  August 4, 2016                        /s/ Paul L. Maloney
                                             HON. PAUL L. MALONEY
                                             UNITED STATES DISTRICT JUDGE