UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

MARVIN BELSER, et al.,

                        Plaintiff,                   Case No. 2:16-cv-134

v.                                         Honorable Paul L. Maloney

JEFF WOODS, et al.,

                        Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Giesen, Huss, and McLean, Theut, and Falk. The Court will serve the complaint against Defendants Ormsbee, Woods, Isard, Horton, Baldino, and Goldberg.

## Discussion

I.   Factual allegations

Plaintiff Marvin Belser, a state prisoner currently incarcerated at the Carson City Correctional Facility, filed this case on June 6, 2016.  On August 4, 2016, the Court dismissed Plaintiff's claims against Defendants Woods, Horton, Isard, Goldberg, Baldino, and McLean for failure to state a claim.  However, the Court ordered service on Defendants Canias, Laplunt, Brown, Filion, and Hatfield with regard to Plaintiff's Eighth Amendment claims against them.  *See* ECF Nos. 12 and 13.  Following the order for service, Plaintiff filed two motions to supplement his complaint to include new claims.  *See* ECF Nos. 5 and 18.  On September 15, 2016, the Court denied Plaintiff's motions.  The Court also instructed Plaintiff to file an amended complaint on the proper form, including all the Defendants that Plaintiff intended to sue and all the claims that he intended to raise.  *See* ECF No. 23.  On September 29, 2016, Plaintiff filed his amended complaint.  *See* ECF No. 26.

In the amended complaint, Plaintiff names multiple individuals as plaintiffs in addition to himself, including Precious Rene Belser (Roby), Marvin Belser, Jr., Latrina Marie Belser, Genesis Lashette Underwood, and Elijah LaMarvin Underwood.  Plaintiff also names all of the Defendants previously named in this case, including those Defendants who were dismissed by the Court on August 4, 2016.  Finally, Plaintiff names Sergeant Unknown Ormsbee, Hearing Officer Unknown Theut, Assistant Resident Unit Supervisor K. Giesen, Deputy Warden Erica Huss, and Dr. Derek Falk as new Defendants in this case.

In Plaintiff's original complaint, he set forth the following allegations:

Plaintiff arrived to prison in his personal electric wheelchair on July 28, 2006. PageID.10. A few weeks later, Plaintiff was taken to the hospital for chest pain and

difficulty breathing. PageID.10. When Plaintiff returned to the prison, the nurse told Plaintiff that another inmate who had been discharged from prison mistakenly took Plaintiff's personal electric wheelchair. PageID.10. Some of Plaintiff's other property was missing too, such as a cushion. PageID.10. These items were never returned.

In addition, Plaintiff has a Child Protective Services case that is documented in the Michigan Department of Corrections (MDOC) computer system, which includes his name and his children's names. PageID.5. Plaintiff contends that he did not consent to this case being available through the law library or MDOC computer system. PageID.5. Plaintiff has asked the law library supervisor (Defendant Goldberg) over twenty times to take his case off of the MDOC computers, but he has not done so. PageID.5. Plaintiff believes that having his, as well as his children's, personal information on the MDOC computers has placed himself and his children in danger. PageID.5. For instance, Plaintiff indicated that he was attacked by inmates, thrown from his wheelchair, hit in the head from behind, harassed by prison staff, and denied medical attention by Defendants Canias, Laplunt, Filion, Hatfield, and Brown. PageiD.5.

Moreover, Defendants Canias, Laplunt, Filion, Hatfield, and Brown would laugh at Plaintiff and tell him that he had nothing wrong with him despite Plaintiff's several kites and requests for medical attention. PageID.5. Plaintiff stated that he requires "nitrotapps, incontinate [sic] garments, transfer board, shower chair, replacement velcro shoes, air mattress, singal [sic] cell detail, P.T. on aide to assist detail and to be transferred to a medically assistant [sic] living facility because [he] cant [sic] stand or walk," for example, but is not receiving them. PageID.5.

On March 1, 2014, while housed at Chippewa Correctional Facility, Plaintiff was attacked by three inmates. PageID.5-6. After this incident, when Plaintiff had returned back to his cell, he was attacked again by three more inmates. PageID.6. These attacks resulted in Plaintiff being unable to stand, walk, move his left side, open his left eye, or speak clearly, and he also had pain in his spine, neck, and right foot. PageID.6. As a result of this incident, Plaintiff requested that he be placed in protective custody. PageID.6.

From March 1, 2014, through March 20, 2016, Plaintiff was told by doctors at Chippewa that he needed a wheelchair. PageID.7. So, Plaintiff was provided a non-electric wheelchair and special details. PageID.7. However, Plaintiff states that while at Chippewa Correctional Facility, Plaintiff's wheelchair, medical equipment, and medical details were taken away from him. PageID.6. From March 29 through April 1, 2014, Plaintiff was at the War Memorial hospital because he was having chest pains and difficulty breathing. PageID.6. Plaintiff stated that the physician at the hospital had made arrangements for Plaintiff to be sent to a medically assisted living facility, for which the Chippewa medical staff agreed to make arrangements, but never did. PageID.6.

Plaintiff was discharged from the hospital on April 1, 2014. PageID.6. Two officers came to the hospital to pick up Plaintiff and transfer him back to the Chippewa facility. PageID.6. While at the hospital, the two officers ordered that Plaintiff stand and dress himself before they left. PageID.6. Plaintiff told them that he could not do that without help, but the officers refused to help Plaintiff. PageID.6. Sergeant Ormsbee eventually told the two officers to not worry about Plaintiff putting his clothes on, and to put Plaintiff in full restraints. PageID.6. The officers then helped Plaintiff off of the hospital bed and put him into a wheelchair. PageID.7. The officers took Plaintiff outside to the transport van, at which time Sergeant Ormsbee told Plaintiff to get out of the wheelchair and enter the van, or else he would be tased pursuant to orders from Defendant Woods. PageID.7. Sergeant Ormsbee tased Plaintiff in the chest twice, which caused Plaintiff to pass out. PageID.7. When he woke up, Plaintiff was naked and being pulled out of the transport van by two officers and placed in a wheelchair. PageID.7.

On May 6, 2014, Plaintiff was transferred to Baraga Maximum Facility. PageID.7. There, he was forced to "crawl on the floor and ground to move around" his cell and the facility. PageID.7. On May 25, 2016, Plaintiff was transferred back to the Chippewa Correctional Facility. PageID.7. When he arrived back to Chippewa, he asked Officer Smith to place him in protective custody, but she said that Sergeant Ormsbee needed to approve this type of request. PageID.7. Sergeant Ormsbee denied Plaintiff's request to be placed in protective custody. PageID.7. Instead, Plaintiff was placed back in the same unit where he was attacked in March of 2014. PageID.7. However, officers told Plaintiff that Defendants Woods, Horton, and Isard stated that Plaintiff should speak up if he is having problems there. PageID.8.

In addition, after his transfer back to the Chippewa facility, Plaintiff requested a single cell due to his wheelchair needs and incontinence issues. PageID.8. However, Plaintiff's request was denied. PageID.8. On May 5, 2016, Plaintiff was assigned a "bunky." PageID.8. Plaintiff caught his bunky stealing Plaintiff's personal property; however, the bunky stated that he would physically harm Plaintiff if Plaintiff told the staff about his stealing. PageID.8. The bunky harassed Plaintiff and made fun of his medical issues, too. PageID.8. Plaintiff fears for his life. PageID.8.

On May 6, 2016, Plaintiff requested that he be placed in protective custody again. PageID.8. After this request, Plaintiff was placed in segregation while his request was pending. PageID.8. That same day, Plaintiff was interviewed by the Security Classification Committee to determine whether he should be placed in protective custody. PageID.8. The committee concluded that Plaintiff should return to the cell he was originally assigned to, and that if he did not return there, he would be issued a Class I misconduct ticket for disobeying a direct order. PageID.8. In response to this order, Plaintiff told the hearing officer (Mr. Theut) that he was in fear for his life, and that he could not defend himself. PageID.8. Plaintiff was then issued a misconduct ticket, for which he was later found guilty and sanctioned to five days

-4-

in segregation. PageID.8. Similarly, on May 21, 2016, Plaintiff received another misconduct ticket for disobeying a direct order. PageID.8. Plaintiff asserts that this denial of protective custody constitutes a claim for failure to protect under the Eighth Amendment. PageID.8.

Moreover, for three years, Plaintiff has not been able to brush his teeth because his long-handled toothbrush was taken by MDOC staff while he was housed at Marquette Branch Prison. PageID.9. Defendant Baldino has refused to renew Plaintiff's detail for a long-handled toothbrush. PageID.9. Plaintiff has tried to use a standard toothbrush, but he cannot use it well because he lost the feeling in his right hand. PageID.9.

In addition, after Plaintiff was transferred back to Chippewa prison, his personal property was lost. PageID.9. Plaintiff has asked several officers and written many grievances regarding this issue, but he has not received any sort of positive responses. PageID.9. In addition, Plaintiff could not exhaust his administrative remedies relating to some other issues because Defendant McLean (the grievance coordinator) did not provide some of Plaintiff's grievances identifier numbers or did not reply to or send a Step II responses for certain grievances. PageID.9-10.

Finally, Plaintiff asserts that Defendant Goldberg has improperly told the law librarians not to respond to any of Plaintiff's kites. PageID.10. Based on all of these occurrences, Plaintiff alleges that Defendants violated his constitutional rights.

*See* ECF No. 12, PageID.70 - PageID.74.

In Plaintiff's amended complaint, he reasserts his claims against Defendants Canias, Laplunt, Brown, Filion, and Hatfield. In addition, Plaintiff reasserts his allegations against Sergeant Ormsbee, who he now includes as a Defendant. Plaintiff claims that on October 7, 2014, Defendant Giesen destroyed over $2000.00 worth of Plaintiff's personal property and told Plaintiff that she did not care that he was being forced to crawl on the floor because it was what he deserved as a result of his case with child protective services (CPS). Defendant Huss also told Plaintiff that he did not deserve a wheelchair because of his CPS case. Plaintiff alleges that Defendant Falk examined Plaintiff twice and refused to do anything for him.

Plaintiff alleges that on March 20, 2016, he was transferred to the Baraga Correctional Facility (AMF). A doctor at AMF gave Plaintiff a detail for a wheelchair beginning on March 23, 2016, and running until March 23, 2017. Plaintiff was subsequently transferred to Chippewa Correctional Facility (URF). As noted above, when Plaintiff arrived at URF, Defendant Ormsbee denied Plaintiff's request for  barrier free / wheelchair accessible / handicap cell, as well as for protective custody, and placed Plaintiff on the same wing where he had previously been attacked. Plaintiff alleges in his amended complaint that Dr. Pohn informed custody staff at URF that Plaintiff could not stand or walk and that Plaintiff should be sent to a medically assisted living facility. Defendant Ormsbee also told Plaintiff that Defendants Woods, Isard, and Horton were all aware of Plaintiff's medical condition and requests, and that they agreed with the denial. However, Plaintiff was told that if anything went wrong, he would be placed in protective custody.

Plaintiff alleges that the bunky he was given on May 5, 2016, said that law library supervisor Reid Goldberg had told him about Plaintiff's case with Child Protective Services and informed him how to look up Plaintiff's information on the law library public computer. As noted previously, Plaintiff was placed in segregation after he requested protection and, when protective custody was denied, Plaintiff received a misconduct ticket for refusing to return to his cell. Defendant Theut found Plaintiff guilty of the misconduct.

Plaintiff states that while he was confined at URF, he had dental work that included the removal of all the teeth from the back of his mouth, so Plaintiff cannot chew properly. Plaintiff also alleges that he is unable to move his left side, and that his right hand is unstable and shakes uncontrollably. Plaintiff almost swallowed the standard sized toothbrush because of his medical condition. Plaintiff has requested false teeth so that he can chew, but his request was denied by

Defendant Baldino.  As noted previously by the court, Plaintiff also alleges that Defendant Baldino denied Plaintiff's request for a long handled toothbrush because of Plaintiff's Child Protective Services case, which caused Plaintiff to be unable to brush his teeth for the past three and a half years.  Plaintiff claims that he was prevented from filing step III grievance appeals at URF by Defendant McLean, who refused to give Plaintiff his step II responses.

Plaintiff claims that Defendants violated his rights under the Eighth and Fourteenth Amendments, the Americans with Disabilities Act (ADA), and under state law.  Plaintiff sues Defendants in both their individual and official capacities.  Plaintiff seeks equitable relief.

## II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff names his children as plaintiffs in this action. Plaintiff lacks standing to assert the constitutional rights of others. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of others. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978).

Plaintiff is not a licensed attorney. Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "in all courts of the United States, the parties may plead and conduct *their own cases* personally or by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654 (emphasis added). The statute

-8-

clearly makes no provision for a *pro se* party to represent others. The federal courts have long held that section 1654 preserves a party's right to proceed *pro se*, but only with respect to her own claims. Only a licensed attorney may represent other persons. *See Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969). Relying on this statute, the Sixth Circuit has squarely held that a *pro se* party may not prosecute a representative wrongful death action brought under section 1983, where the beneficiaries thereof included persons other than himself. *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003). The court relied on an earlier Second Circuit case, which had held that an administratrix or executrix of an estate may not proceed in a wrongful death action *pro se* when the estate has beneficiaries and creditors other than the litigant. *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997). Therefore, all named plaintiffs except for prisoner Marvin Belser are dismissed.

In addition, Plaintiff's claims for deliberate indifference to medical needs by Defendants Canias, Laplunt, Brown, Filion, and Hatfield are essentially identical to those asserted against them in the original complaint. Therefore, for the reasons set forth in the opinion dated August 4, 2016 (ECF No. 12), Plaintiff's Eighth Amendment claims against Defendants Canias, Laplunt, Brown, Filion, and Hatfield are not clearly frivolous and may not be dismissed on initial review.

In addition, Plaintiff claims that Defendants Giesen and Huss both told Plaintiff that he did not deserve a wheelchair because of his Child Protective Services case. Plaintiff also claims that Defendant Falk refused to do anything for him while he was confined at MBP. However, Plaintiff fails to allege any facts showing that Giesen and Huss were involved in the actual denial of a wheelchair, or that Defendant Falk was deliberately indifferent to Plaintiff's serious medical

needs.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-69 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Therefore, Plaintiff's claims that Defendants Giesen, Huss, and Falk denied him necessary medical care in violation of the Eighth Amendment are properly dismissed.

Moreover, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment.  *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987).  Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Id.*  Therefore, any comments by Defendants Giesen and Huss asserting that Plaintiff did not deserve a wheelchair, although unprofessional, do not constitute a violation of Plaintiff's constitutional rights.

Plaintiff claims that Defendant Ormsbee violated his Eighth Amendment right to be free from excessive force.  The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."  *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification."  *Id.*

The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010).  Under

*Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 130 S. Ct. at 1178.  In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response.  *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

As noted above, Plaintiff alleges that on April 1, 2014, Defendant Ormsbee told transporting officers to not worry about Plaintiff putting his clothes on before taking him from the hospital, and to put Plaintiff in full restraints.  The officers then helped Plaintiff off of the hospital bed and put him into a wheelchair.  When Plaintiff arrived at the transport van, Defendant Ormsbee told Plaintiff to get out of the wheelchair and enter the van, or else he would be tased.  Because Plaintiff was unable to comply, Defendant Ormsbee tased Plaintiff in the chest twice, which caused Plaintiff to pass out.  When he woke up, Plaintiff was naked and being pulled out of the transport van by two officers and placed in a wheelchair.  The Court concludes that Plaintiff's excessive force claim against Defendant Ormsbee may not be dismissed on initial review.

Plaintiff also alleges that Defendant Ormsbee denied him a barrier free / wheelchair accessible / handicap cell, and that he told Plaintiff that Defendants Woods, Isard, and Horton were all aware of Plaintiff's medical condition and needs, and that they all agreed that he should not be given a handicap cell.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with

contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty*., 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty*., 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

-12-

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds*

*v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

In this case, Plaintiff alleges that Defendants Orsmbee, Woods, Horton, and Isard were all involved in denying Plaintiff's request for a handicap cell, despite the fact that Plaintiff required a wheelchair and was incontinent. The Court concludes that Plaintiff's Eighth Amendment claim regarding the denial of a wheelchair accessible handicap cell against Defendants Ormsbee, Woods, Horton, and Isard is not properly dismissed upon initial review.

Plaintiff claims that Defendant Baldino denied Plaintiff dentures and a long handled tooth brush for more than three and a half years. Plaintiff's claim regarding his need for a long handled toothbrush was previously asserted in his original complaint and is essentially the same claim. Therefore, for the reasons stated in the August 4, 2016, opinion, this claim is properly dismissed. However, the Court concludes that dismissal of Plaintiff's claim regarding the denial of dentures would be premature given Plaintiff's allegations that he is unable to chew his food without dentures.

Plaintiff also claims that Defendant Goldberg placed him in danger when he told his bunky about Plaintiff's Child Protective Services case. In addition, Plaintiff claims that Defendants Orsmbee, Woods, Horton, and Isard improperly denied his request for protective custody after Plaintiff was threatened by his bunky. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus,

-14-

prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.") In his amended complaint, Plaintiff specifically claims that Defendant Goldberg provided his bunky with information which made Plaintiff a target, and that Defendants Orsmbee, Woods, Horton, and Isard refused to protect him from his bunky. The Court concludes that, based solely on the information in the amended complaint, Plaintiff's claims that Defendants Goldberg, Orsmbee, Woods, Horton, and Isard failed to protect him are nonfrivolous and may not be dismissed on initial screening.

Plaintiff claims that Defendant Giesen destroyed over $2000 worth of his personal property. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v.*

-15-

*Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim against Defendant Giesen is properly dismissed.

Plaintiff alleges that Defendant McLean violated his rights by refusing to give him step II grievance responses, which prevented Plaintiff from filing step III grievance appeals. Plaintiff

has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Defendant McLean's actions have not barred Plaintiff from seeking a remedy for his grievances.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 Fed. App'x 411, 415-416 (6th Cir. 2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n. 6 (1977)).  Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process.  *See Azeez v. DeRobertis*, 568 F. Supp.  8, 10 (N.D. Ill. 1982).  Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts

-17-

claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies.   *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850,  1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).  In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendant McLean.

Plaintiff claims that Defendant Theut violated his due process rights by finding Plaintiff guilty of a major misconduct ticket for refusing to return to the general population after he was denied protective custody.  Defendant Theut is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255.  Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections.  *See* MICH. COMP. LAWS § 791.251(e)(6).  Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed.  *See* MICH. COMP. LAWS § 791.252(k).  There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2).  Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges.  *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988).  As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers.  *Id*.; *and see Barber v. Overton*,

-18-

496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).  Therefore, Plaintiff's claim against Defendant Theut is properly dismissed.

       The Court concludes that Plaintiff's claims that Defendants Ormsbee, Woods, Isard, and Horton violated his rights under the Americans with Disabilities Act (ADA) when they denied him accommodation related to his need for a wheelchair and a handicap accessible cell are not clearly frivolous and may not be dismissed on initial review.  In addition, Plaintiff's pendent state law claims against Defendants Ormsbee, Woods, Isard, Horton, Baldino, and Goldberg are not properly dismissed on initial review.

<u>**Conclusion**</u>

       Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Giesen, Huss, and McLean, Theut, and Falk will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Ormsbee, Woods, Isard, Horton, Baldino, and Goldberg.

       An Order consistent with this Opinion will be entered.


Dated:   November 29, 2016                          /s/ Paul L. Maloney                      
                                   Paul L. Maloney
                                   United States District Judge